LYNCH v. NASSAU ELECTRIC R. CO.

(Supreme Court, Appellate Division, Second Department. May 8, 1899.)

STREET RAILROADS—INJURIES ON TRACKS—VERDICT—WEIGHT OF EVIDENCE.
　　Where a number of disinterested witnesses testify, for a street-railway company, that injuries to one driving on the track did not result from the collision of a car with the driver's wagon, but from a subsequent fight between the motorman and the driver, precipitated by the latter, a verdict for the latter is against the weight of the evidence.

　　Goodrich, P. J., dissenting.

Appeal from special term.

Action by John A. Lynch, an infant, by Ellen Murray, his guardian, ad litem, against the Nassau Electric Railroad Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Stephen C. Baldwin, for appellant.
James W. Ridgway, for respondent.

WOODWARD, J. The plaintiff in this action has attempted to establish that while driving a milk wagon upon the tracks of the defendant, on Thirty-Ninth street, in the borough of Brooklyn, his vehicle was struck by a car of the defendant, and that he was thrown to the pavement, sustaining injuries which have made him permanently deaf. The jury before whom the case was tried have found a verdict in his favor for $10,000.

There was a conflict in the evidence before the jury, the defendant producing witnesses who were wholly disinterested, and who substantially agreed in their testimony to the effect that the collision was not the proximate cause of the injury, but that it resulted, if at all, from a fight between the plaintiff and the defendant's motorman, after the accident. The evidence in behalf of the defendant is that the car of the defendant came into collision with the milk wagon, being driven by the plaintiff, upon the tracks of the defendant, on a dark morning in November, 1897, before daylight; that the car was running upgrade at the rate of about 5 miles an hour, the plaintiff's horse moving on a walk; that the motorman saw the wagon when about 25 feet distant, but was unable to stop the car before a collision occurred, throwing the horse down, and injuring to some extent the wagon; that after the contact plaintiff stepped from the wagon, with a boy companion, and began an assault upon defendant's motorman, in which the latter was struck with a switch iron, and severely cut about the face; that during the melee the plaintiff and the motorman clinched, the plaintiff falling to the ground, with the motorman on top of him; that soon after the fight was renewed, two brothers of the plaintiff aiding in the assault upon the motorman, who was severely handled, and was obliged to place himself under the care of a physician.

The learned trial court, in denying the motion for a new trial, writes an opinion in which it says:

"Having seen all the witnesses, and heard the evidence, at the close of the case I was satisfied that the injuries the plaintiff received were the result of a fight with the motorman, instead of the effect of a collision with the car."

We are unable to understand how the learned trial court could, upon hearing the evidence, come to any other conclusion. This verdict was, we think, against the weight of evidence, and that the jury "obviously strayed from the consideration of the evidence into the domain of speculation" (Colvin v. Railroad Co., 32 App. Div. 76, 52 N. Y. Supp. 698) seems to us apparent; and this case ought at least to be submitted to another jury (Pierce v. Railway Co., 21 App. Div. 427, 431, 47 N. Y. Supp. 540).

The judgment and order appealed from should be reversed, and a new trial granted. All concur, except GOODRICH, P. J., who dissents.

GOODRICH, P. J. (dissenting).   I am unable to concur in the opinion of my learned associate.   On the motion for a new trial the learned justice who presided filed an opinion in which he said:

"Having seen all the witnesses, and heard the evidence, at the close of the case I was satisfied that the injuries the plaintiff received were the result of a fight with the motorman, instead of the effect of a collision with the car; but a careful consideration of the evidence convinces me that other people could take the view the jury did, as there is evidence which, if believed, justifies the finding of the jury."

An analytical examination of the testimony has led me to a different result, viz. that I am not clear whether the plaintiff's injuries were, or were not, the result of a fight with the motorman, notwithstanding the fact that, in number and distinterestedness of witnesses, the apparent weight of evidence is in favor of the defendant's contention.   Under such differing deductions by different individuals, it is clear that the question was pre-eminently a proper one to submit to a jury.

On November 3, 1897, before daylight, the plaintiff was driving a milk wagon along Thirty-Ninth street, westerly from Eighth avenue, in the borough of Brooklyn.   He had started from his home, some distance to the eastward of Eighth avenue, and, before driving upon the track at that place, looked to see if any car was approaching from the rear.   Seeing none, he drove upon the westbound track, and continued thereon for several hundred feet, to a point about 100 feet westerly of Seventh avenue, when his wagon was struck in the rear by one of the defendant's trolley cars with such force that the horse was knocked down, the wagon more or less injured, and the milk splashed over the entire front of the car. On the evidence the jury were justified in finding the defendant's motorman guilty of negligence, and, if this were the only question involved in the case, there would be no difficulty in deciding this appeal.

The question as to which there is much doubt arises from a positive contradiction of the plaintiff's theory of the accident.   He claims that by the shock of the collision he was thrown out of the wagon, striking the ground headforemost, and that by the fall his skull was fractured, and he was made permanently deaf.   In the statement that he was thrown out he is corroborated by the testimony of a lad (Connery) who was riding with him.   There is also corroboration of his story in the testimony of several other witnesses.   On the other hand, the defendant claims that the plaintiff was not thrown from the wagon by the collision, but that he and the lad were seen to get out of the wagon after the collision; that the plaintiff, being angry with the motorman, picked up and threw a cobblestone at him, and thereafter engaged in a fight with him, assisted by his brothers, Michael and William, who came from their home to the scene of the accident; that in this fight the motorman and the plaintiff clinched, and the plaintiff was thrown to the ground, with the motorman on top of him; and that in this fall the plaintiff received all his injuries.

The theory of the defendant is supported by a larger number of

witnesses than testified for the plaintiff. The plaintiff and Michael were examined as witnesses, but William was not called. Michael positively stated that he, and not John, had the altercation with the motorman. It is evident that here was a sharp contradiction on the main question in the case. So much was the learned justice impressed with this circumstance that he said in his charge:

"Some of the witnesses are deliberately lying, one way or the other, to a certainty. Of course, if what the plaintiff claims is true, that he did nothing and knew nothing after he left the wagon, the testimony of the other witnesses that he was an active participant in the fight is untrue."

I cannot escape the same conclusion. The testimony was of such a character as to require a submission of this crucial question to the jury, and I am not willing to interfere with their conclusion. The judgment should be affirmed.